Green, J.
Upon the first hearing of this cause, I concurred, without hesitation, in the opinion, that it did not present a fit case for the jurisdiction of a court of equity; principally upon the grounds, that the parties had, by their contract, provided the means by which the appellees might enforce their rights, without a resort to that tribunal; and that there was no circumstance in the case, which presented such an obstacle to the assertion of those rights in the stipulated mode, as to make such a resort necessary or proper, particularly as against the purchasers under Morris, as to whom they might, even if the trustee was unwilling, have proceeded in his name at law, or if not, could have coerced him in equity, to the performance of his trust, without making those purchasers parties.
The second argument upon the point of jurisdiction has changed my opinion. Although I am not prepared to say, that every creditor by deed of trust, has, like every mortgagee, a right, at his pleasure, to call his debtor into a court of equity, the latter being under a necessity to resort there *209 lor the purpose of foreclosing die equity of redemption, and enforcing a sale, while the former, in general, is under no such necessity for the attainment of either of those objects; yet, ] think, diere are circumstances in this case, which support the jurisdiction. The deed of trust was made to secure a large debt then due, and farther advances stipulated to be made by the appellees to Morris & Mitchell. All the property (except the five slaves in question) had been sold by the trustee, and its proceeds exceeded considerably the debt due at the date of the deed, but left a large balance on the account including the subsequent advances; the amount of which had been adjusted between the appellees and Morris. The bill, after stating these facts, charges, that four of the slaves in question, were.in the possession of Ambler, Burton, and Chilton, respectively, and that the other was obtained from Morris, by the defendant Robertson; that the plaintiffs are ignorant of the manner or terms, on which they acquired possession of the slaves, or the title under which they claim; but that Morris was possessed of and entitled to the slaves, when he conveyed them by the deed of trust, and that the rights of those defendants are subordinate to those of the plaintiffs. All of those defendants rely upon the same defence in one particular: admitting, that they claimed under sales made by Morris, after the date of the deed, and before the settlement of the accounts between Morris and the plaintiffs, they insist, that the sales were made by Morris under the authority of one of the plaintiffs, and that he had remitted the proceeds to them. I pass by the suggestion in in the bill, of a doubt as to the possible invalidity of Morris’s title to die-property, sold and purchased by one of the plaintiffs, and the claim that, in such event, Morris Mitchell would not be entitled to a credit for the amount of the sales, and thus the balance due to the plaintiffs would be increased i for the trustee sold only such title as was vested in him by the deed; and, consequently, the debtors are entitled to full credit for the amount of sales, whether the title was good or not. I pass by, also, the suggestion, that the trustee declined *210 to sue at law for the recovery of the slaves. These suggestions, if well founded, afford no ground of jurisdiction against purchasers from Morris. The other matter, is, I think, sufficient for that purpose.
The bill does not, indeed, expressly affirm, that the defendants, Ambler, Burton, Chilton and Robertson, claim under Morris, subsequent to the execution of the deed. If it had alleged, that they claimed paramount to Morris, that would of itself have put an end to the jurisdiction: or, if it had been totally silent as to the character of their claim, and they had demurred, it might have presented a doubtful question. But it virtually affirms, that they claimed title, (if they claimed any) under Morris, subsequent to the date of the deed, by alleging, that he possessed and was entitled to the slaves at that lime. And it appears, from their answers, not only that such was really the character of their claims, but that they were of such a nature, that they could only be asserted in a court of equity, and also that they purchased under Morris, before the settlement of the accounts between him and the plaintiffs, which therefore (they say) did not bind them. The consequence of which is, that, if this bill was dismissed for want of jurisdiction, the plaintiffs would be driven to prosecute four several suits at law, in the name of the trustee, in which they would upon the matter in this record inevitably recover: and, then, each of the defendants claiming the slaves, would have a right to resort to a court of equity, to assert the equitable titles insisted on in their defence here, and also to call for a settlement of the accounts between the appellees and Morris & Mitchell, without being bound by the settlement already made between them. One of the defendants- claims such a settlement in this cause. To prevent this multiplicity of suits, all depending upon the same facts, is, I think, a sufficient foundation for the jurisdiction of the court of chancery.
The only objection to this, is, that this ground of jurisdiction appears (in part) only from the answers; and that according to the former decisions of this court (Pollard v. *211 Patterson, 3 Hen. & Munf. 67.) if the hill do not shew suf- „ . ......... , , ficieut matter to sustain the jurisdiction, it is not saved by the provision of our statute, that “ after answer filed, and no plea in abatement to the jurisdiction of the court, no exception for want of jurisdiction shall ever afterwards be made,” 1 Rev. Code, ch. 66. § 86. This statute was certainly intended to strengthen the jurisdiction of the courts of chancery, so that, if a bill state a case fit for that jurisdiction, and the facts be not denied, but some other matter which would destroy the jurisdiction appear after answer, in the course of the proceedings in the cause, it shall not abate the bill. And, upon the fair construction of the act, I think it may bo said, that, if the bill do not present a case for the jurisdiction of the court, and other matter appear in the progress of the cause, which supplies the defect, the defendant, not having demurred to the bill, cannot object to the jurisdiction at the hearing: as, if the bill was for an account, without shewing that the accounts were of such a character as to give jurisdiction, and that appeared from the answer or proof.
It was insisted, that to maintain the jurisdiction in this case, would be in opposition to some of the former decisions of this court; Stuart v. Coaltar, Bowyer v. Craigh, and Randolph v. Kinney.
In the first of those cases, a party having an equitable title to an undivided part of a tract of land, in common with another who had a legal title to a part, filed a bill against several coterminous tenants, claiming adverse titles against the plaintiff, and those under whom he claimed, for the purpose of adjusting the boundaries, not in respect to one line only common to all, and depending upon the same evidence, but as to several depending upon different evidence. Here, all the parties claim under the same title, and their rights depend upon the same evidence. There, the defendants had legal rights, which they could vindicate at law, and which they had a right to try there and there only. Here the defendants claim equitable rights, which cannot be discussed in a court of law.
*212 In Bowyer v. Creigh, also, the defendants claimed against the trustee and cestui que trust, and asserted a legal right against tire deed, which they also were entitled to vindicate exclusively in a court of law. And, besides, the interference of a court of equity in such a case, would have counteracted the policy of the statute of frauds, and of the statute authorising a creditor to enforce the sale of property taken in execution of which the title is contested, by indemnifying the sheriff.
And, in Randolph v. Kinney, the plaintiff sought to reach parties upon the principle of substitution, through a long series, when the rights were intirely distinct, in a case in which there was no right of substitution whatever.
I do not see, that the principles of any of those cases have any application to that under consideration.
Cabell, J. concurred.
Brooke, President.
On the merits of this case, I concur in the decree, which has been agreed upon by my brother judges. But I am not satisfied, that there is error in the former opinion of the court on the point of jurisdiction. If it were admitted, that a proper foundation is laid in the bill, for the jurisdiction of the court, as against those defendants who have not appealed from the decree of the chancellor, it would not follow, that a proper ground is also laid for the jurisdiction, as regards the appellants. But, as that point has been argued, for the purpose (as was said) of laying a foundation for the jurisdiction as to the appellants also, I shall make some general remarks on it.
If (as was insisted) a deed of trust was, in all respects, as regards the jurisdiction of the court, nothing more than a mortgage, it would be admitted, that, in every case, resort might be had to a court of equity, to adjust the rights .of the parties under it. But they are essentially different. A mortgage is only an equitable security for the payment of money; and the moment the property in it is forfeited to the mort *213 gagee, by a failure to pay the money, and to comply with its terms, it exclusively belongs to equity, to relieve against it upon a bill to redeem, or to adjust the rights of the parties on a bill to foreclose. The mortgagor has an inherent equity in the contract itself, which it belongs to the court of equity, exclusively, to take cognizance of; an equity, which follows the mortgage in whosever hands it may be. But it is not so in the case of a deed of trust. That it is a legal security for the payment of money &c. recognized as such by statute law. The property in it, is not liable to forfeiture, in any event, as in the case of a mortgage. There is nothing in it against conscience, to give a court of equity jurisdiction. The trustee may sell the property in it, and execute the trust confided to liim by the parties to it; and having done so, in pursuance of the deed, there is nothing for a court of equity to act on. Neither the debtor nor the creditor can come into the court, on die contract in the deed alone, as in the case of the mortgage. If either come into the court, it must be on ground foreign to the deed. Each party lias a right to insist on the execution of the trust by the trustee. Having the legal title to the property, under the deed, his remedy to get possession of.it is adequate at law; or, on his declining to sue there, the cestui que trust may, in his name, recover the property at law, in order that it may be administered by the trustee, according to the terms of the deed.
Whether, independently of the deed of trust, a proper ground for the jurisdiction of the court, be alleged in the bill, as to those defendants who have not appealed, it is not necessary, for the reason before stated, to examine: the inquiry is, have the appellees stated in their bill, any ground of jurisdiction as against the appellants? As regards them, the appellees come into the court of equity, to assert their legal right under tile deed of trust, to the slaves in their possession; that is, they come into the court of equity, to assert the legal rights of the trustee; which is the same thing, since they might assert the legal right of. the trustee *214 at law. There is nothing in the bill, which shews that the , a remedy at law was inadequate: for if it were admitted, that on the contract contained in the deed of trust, there is ground for the jurisdiction of the court of equity, as to the parties to it and those claiming under it, the appellants cannot be affected by it; they are strangers to the deed, had no notice of it, and do not claim under it. This is conceded in the admission, that if the appellees be not relieved in a court of equity, on their bill in this case, they will be barred by the act of limitations at law, unless there be a reservation in the decree.
The allegation in the bill, that the appellants purchased the slaves in question of Morris the debtor, and that he had possession of them and title to them when he executed the deed of trust, lays no foundation for the jurisdiction of a court of equity; as, if true, it might have been proved at law, as well as in equity. And if this be the only ground, a demurrer would have been fatal to the bill. The inference from these facts, that the appellants, after judgments at law against them, would have an equity which they might assert in a court of equity, is not enough: it ought to have been directly charged in the bill, as the court will not take jurisdiction by inference. And if it were, the answer is, that such an equity is not under the deed of trust, but is founded on the general principles of the court, and might or might not be asserted, according to circumstances: it ought not to deprive the appellants of a trial at law on viva voce testimony: it ought to have no influence on the question of jurisdiction. Nor will the answers of the appellants help the case stated in the bill, though a part of the defence relied on, be only proper in a court of equity. The jurisdiction of the court depends on the character of the bill, and on the construction of the provision of the statute, 1 Rev. Code, ch. 66. § 86. The construction of the statute has been given by this court in the case of Pollard v. Patterson. In that case, the jurisdiction was held to depend on the bill only; nothing was said of the answers; and, *215 though Pollard, in his answer, virtually admitted the juris-diction, by offering to substitute other seventy-five thousand acres of land, for the lands of the plaintiff, which ho had sold to Morris by mistake, the court took no notice of the answer, and dismissed the bill for the want of jurisdiction,
The other ground taken in the argument, that the court will take jurisdiction to avoid a multiplicity of suits, I think more questionable. Though it is virtually alleged in the bill, that the appellants claim title to the slaves in question under Morris, by purchase subsequent to the execution of the deed of trust, that is no part of their title, hut belongs to the pretensions of the appellees. Possession stands for the light, both at law and in equity, until a better right be shewn: so emphatically, indeed, that five years adversary possession of slaves will prevail over the right of the true owner, even though he again get possession. Property in slaves passes by delivery of possession only, except in the cases of deeds of gift, mortgages, deeds of trust and wills, under neither of which do the appellants claim. The possession of each of the appellants is foreign to the possession of the others: they have no common interest in any respect: the trial of the right of one, cannot affect the right of the others: not claiming under the deed of trust, they do not claim from one common source. Their case, then, does not fall within the principle, on which courts of equity take jurisdiction to avoid a multiplicity of suits.
Looking to the bill only, (as was done in the case of Pollard v. Patterson) there is nothing in it to warrant the jurisdiction of the court. In that case, Pollard, in his answer, offered an equitable compromise for the injury he had done the plaintiff, by selling his lands to Morris by mistake: but the court disregarded it. If the answer is to come in, before the question of jurisdiction arises, no demurrer to the hill can be sustained. To put the jurisdiction of the court, on the ground of a failure to demur to the bill before answer filed, were to abandon the correct construction of the 86th section of the chancery law, and to overrule the case of Pollard v. Patterson.
*216 I am still, therefore, of the opinion, that the bill ought to be dismissed as to the appellants, and the cause remanded as to the parties who have not appealed.
The majority of the court, sustaining the jurisdiction, proceeded to consider the proofs, touching the controverted questions of fact, and reversed the chancellor’s decree upon the merits: dismissed the bill, as to the appellants, Ambler, Burton and Robertson: and remanded the cause to the court of chancery, as to the appellant Chilton, and the defendants who had not appealed from tire decree; as to these, for further proceedings generally; and, as to Chilton, that an issue might be directed to ascertain the true state of his case, in one particular, which the proofs then in the cause left in doubt.